# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Confederación Hípica de Puerto Rico; Inc.; Camarero Racetrack Corp.**<br><br>**PLAINTIFFS**<br><br>v.<br><br>**Confederación de Jinetes Puertorriqueños, Inc.**; **Asociación de Jinetes de Puerto Rico, Inc.**;<br>**Abner Adorno**, his wife **Jane Doe 1** and their conjugal partnership; **Alexis Valdés**, his wife **Jane Doe 2** and their conjugal partnership; **Anardis Rodríguez**, his wife **Jane Doe 3** and their conjugal partnership; **Carlos Quiñonez**, his wife **Jane Doe 4** and their conjugal partnership; **Cindy Soto**, her husband **John Doe 1** and their conjugal partnership; **David Ortiz**, his wife **Jane Doe 6** and their conjugal partnership; **David Rosario**, his wife **Jane Doe 7** and their conjugal partnership; **Edwin Castro**, his wife **Jane Doe 8** and their conjugal partnership; **Erik Ramírez**, his wife **Jane Doe 9** and their conjugal partnership; **Héctor Berríos**, his wife **Jane Doe 10** and their conjugal partnership; **Héctor Rivera**, his wife **Jane Doe 11** and their conjugal partnership; **Ismael Pérez**, his wife **Jane Doe 12** and their conjugal partnership; **Israel O. Rodríguez**, his wife **Jane Doe 13** and their conjugal partnership; **Javier Santiago**, his wife **Jane Doe 14** and their conjugal partnership; **Jomar García**, his wife **Jane Doe 15** and their conjugal partnership; **Jorge G. Robles**, his wife **Jane Doe 16** and their conjugal partnership; **José A. Hernández**, his wife **Jane Doe 17** and their conjugal partnership; **Juan Carlos Díaz**, his wife **Jane Doe 18** and their conjugal partnership; **Kennel Pellot**, his wife **Jane Doe 19** and their conjugal partnership; **Kevin Navarro**, his wife **Jane Doe 20** and their conjugal partnership; **Luis Negrón**, his wife **Jane Doe 21** and their conjugal | Civil Action No. 16-_____ |

partnership; **Mario M. Sánchez**, his wife **Jane Doe 22** and their conjugal partnership; **Misael Molina**, his wife **Jane Doe 23** and their conjugal partnership; **Pablo Rodríguez**, his wife **Jane Doe 24** and their conjugal partnership; **Pedro González**, his wife **Jane Doe 25** and their conjugal partnership; **Sasha Ortiz**, his wife **Jane Doe 26** and their conjugal partnership; **Steven Fret**, his wife **Jane Doe 27** and their conjugal partnership; **Alfonso Claudio**, his wife **Jane Doe 28** and their conjugal partnership; **Ramón Sánchez**, his wife **Jane Doe 29** and their conjugal partnership; **Miguel A. Sánchez**, his wife **Jane Doe 30** and their conjugal partnership; **Jonathan Agosto**, his wife **Jane Doe 31** and their conjugal partnership; **Jan Carlos Suárez**, his wife **Jane Doe 32** and their conjugal partnership; **Yashira Tolentino**, her husband **John Doe 2** and their conjugal partnership; **José M. Rivera**, his wife **Jane Doe 33** and their conjugal partnership; **Alvin Colón**, his wife **Jane Doe 34** and their conjugal partnership; **Jesús Guadalupe**, his wife **Jane Doe 35** and their conjugal partnership.

**DEFENDANTS**

# COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW Plaintiffs, **Confederación Hípica de Puerto Rico, Inc.**, (hereinafter, "**CHPR**"), and Camarero Racetrack Corp., (hereinafter, "**Camarero**"), by and through their respective undersigned attorneys, and respectfully **STATE** and **PRAY** as follows:

## I. INTRODUCTION

1. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Plaintiffs, jointly move this Honorable Court for an Order enjoining the above mentioned Defendants (hereinafter, the "Defendants") from engaging in an illegal boycott by refusing to ride thoroughbred horses in

2

the races to be held and scheduled at Camarero Racetrack. The races scheduled for Thursday, June 30, 2016 and Friday, July 1, 2016 at Camarero Racetrack have already been cancelled due to the Defendants' refusal to ride the horses. Subsequent races, scheduled for the days thereafter, will also need to be cancelled if the Defendants continue their illegal boycott.

2. The Defendants, through their concerted efforts, have entered into a conspiracy to fix prices and conduct an illegal boycott, thereby engaging in acts violating the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, and engaging in unfair methods of competition or affecting commerce in violation of the Federal Trade Commission Act, 15 U.S.C. § 45. Plaintiffs also claim damages under the Clayton Act, 15 U.S.C § 15 for the damages suffered by the illegal acts of the Defendants.

## II.    JURISDICTION AND VENUE

3. This Honorable Court has original jurisdiction based on Federal Question, 28 U.S.C. § 1331 because it is an action to redress violations of federal law, including violations to The Clayton Act as codified in 15 U.S.C. § 15, and the Sherman Antitrust Act, 15 U.S.C. § 1. This Court also has jurisdiction pursuant to 15 U.S.C. § 26, which grants jurisdiction over actions for injunctive relief against violations of 15 U.S.C. § 1.

4. Venue lies in this judicial district as the facts and occurrences took place in the District of Puerto Rico; all the events have occurred in the Commonwealth of Puerto Rico. 28 U.S.C. § 1391. Venue is also proper in this district pursuant to the terms of 15 U.S.C. § 22.

## III.    GENERAL ALLEGATIONS

5. CHPR is a non-profit organization, organized for the exclusive purpose of serving thoroughbred horse owners of Puerto Rico in all aspects related to horse racing in Puerto Rico.

CHPR is comprised of two hundred and ninety (290) members and it is the exclusive representative of all horse owners before the racetrack operator Camarero.

6. Plaintiff Camarero is a corporation organized under the laws of the Commonwealth of Puerto Rico that among other responsibilities operates the racetrack located at Canóvanas, Puerto Rico.

7. Plaintiffs initiate this Federal District Court proceeding to enjoin the Defendants from violating federal antitrust laws by engaging, orchestrating and/or entering into a conspiracy, by refusing to enroll and register to mount the thoroughbred horses assigned for in the races scheduled at the racetrack and to secure such equitable relief as may be appropriate in this case.

8. Co-Defendant Confederación de Jinetes Puertorriqueños, Inc., hereinafter "Confederación de Jinetes" is a non-profit corporation that represents some of the licensed jockey's riding at Camarero Racetrack.

9. Co-Defendant Asociación de Jinetes de Puerto Rico, hereinafter "Asociación de Jinetes" is a non-profit corporation that represents some of the licensed jockeys riding at Camarero Racetrack.

10. All jockeys, to the best of the knowledge and belief, are members of the Confederación de Jinetes or the Asociación de Jinetes.

11. The other individual named defendants are active jockeys that ride horses at Camarero and are licensed by the Puerto Rico Horse Racing Administration. Said jockeys, their wives and their respective legal conjugal partnerships, are also included as defendants. Because at this stage their identities are unknown, they will be substituted with their real names as soon as this information becomes available through discovery.

**IV. STATEMENT OF FACTS**

12. Horseracing in Puerto Rico is held at Camarero Racetrack, located in Canóvanas, normally from Wednesdays thru Sundays.

13. The horse racing industry is a highly regulated industry in Puerto Rico. The racing operations are established and controlled by Commonwealth regulators. Racing days are established and controlled by Commonwealth regulators. A racetrack cannot make losses by, for example, establishing on its own another comparable race day after races are cancelled.

14. The "Puerto Rico Horse Racing Industry and Sport Act", 15 L.P.R.A. § 198 et seq. (hereinafter, the "Act"), establishes the manner in which the money received from the bets are distributed. 15 L.P.R.A. § 198s. Among others, said section of the Act establishes the amount of money to be received by the racetrack operator, the horse owners, the Government of The Commonwealth of Puerto Rico, the betting parlors, and the horse breeders.

15. Jockeys are not employees but independent contractors.

16. Camarero does not control a jockey's work in any manner. Camarero does not hire or fire jockeys. Camarero has no input in whether a jockey rides a particular horse and cannot require a jockey to ride any horse. Whether a jockey rides a particular horse in a particular race depends solely on whether an owner and/or trainer selects him/her and if selected, whether the jockey wants to ride that particular horse in that particular race.

17. A jockey is free to choose the racetrack at which to seek mounts, and, if asked, free to accept or decline an offered mount to ride a particular horse in a particular race.

18. Jockeys provide their own equipment, and are free of any control by the horse owners and/or trainers to whom they contract their services.

19. Camarero does not pay the mount and other fees of jockeys, pursuant to the applicable Commonwealth regulations. Owners pay the mount and other fees in accordance with the terms incorporated in an official racing regulation (the "Puerto Rico Horse Racing Board").

20. Jockeys are free to negotiate with owners for their compensation.

21. Jockeys are not employed by Camarero nor are they employees of owners or trainers.

22. Jockeys in Puerto Rico are contracted as independent contractors by the owners of the thoroughbreds through a "ticket" which is signed by the jockey or the jockey's authorized agent and the horse owner or the horses' trainer. Said "ticket" constitutes the agreement among the parties for each individual race that a jockey is to ride on a horse.

23. As independent contractors, jockeys are engaged by horse owners to participate in races at various tracks throughout the United States, including the Camarero Racetrack. Except to the extent that competition has been restrained as alleged herein, the members of the Confederación de Jinetes and Asociación de Jinetes have been and are now in competition among themselves and with other professional jockeys for opportunities to ride horses at racing events.

24. The Defendants' activities at issue in this Complaint occur in interstate commerce and affect interstate commerce.

## THE BOYCOTT

25. The Defendants have entered into an agreement among themselves to restrain trade by refusing to compete for or accept mounts for horses entered in races to be run at Camarero's Racetrack, and by threatening to boycott, and boycott the races, until they receive, among others, an increase in payment for their mounts. This restraint of trade is itself unlawful

and also part of a concerted action among Defendants to set aside valid disciplinary measures imparted to the jockeys, the firing of the President of the Racing Jury and one of its associate members, and others, specifically set forth in the Confederación de Jinetes and Asociación de Jinetes demand letter of June 29, 2016. **Exhibit -1-.**

26. On June 10, 2016, a controversy arose between certain jockeys that ride at the Camarero Racetrack and the racetrack stewards. This controversy was presented before the stewards at the Jockey Room who determined that the jockeys had acted improperly in delaying the start of the scheduled races.

27. After this meeting, the jockeys involved in the controversy were penalized by the stewards with a two hundred and fifty dollar ($250.00) fine for the incidents that occurred on June 10, 2016. See Steward's report dated June 26, 2016. **Exhibit -2-**.

28. On June 16, 2016, the Asociación de Jinetes through its president, Mr. Alberto Ojeda, and its legal advisor, Mr. Jorge Toro McCown, Esq., sent a letter to the Horse Racing Administrator, Mr. Wilfredo Padilla, requesting that he intervene as a mediator in the controversy between the jockeys and the stewards. In said letter, the Asociación de Jinetes threatened the Horse Racing Administrator to boycott the races if no action was taken. See the June 16, 2016 letter. **Exhibit -3-**.

29. On June 20, 2016, the Horse Racing Administrator replied to the letter sent by the Asociación de Jinetes and declined its request to act as a mediator. **Exhibit -4-**.

30. On June 21, 2016, CHPR through its president, Mr. Renato Barrios, Esq., sent a letter to the Asociación de Jinetes' attorney, Mr. Jorge Toro, informing him that a boycott by the jockeys constituted a violation of the Sherman Antitrust Act. **Exhibit -5-**.

7

31. On Friday June 24, 2016, the Confederación de Jinetes, through its president Mr. Axel A. Vizcarra Pellot, Esq., sent a letter to Horse Racing Administrator, Mr. Wilfredo Padilla. In said letter, Mr. Vizcarra stated that the Confederación de Jinetes endorsed the petition made by the Asociación de Jinetes to the Horse Racing Administrator, to set aside the penalties imposed by the stewards to certain jockeys. In Mr. Vizcarra's letter, for the first time, the Jockeys requested an increase to the amount of money they receive for every time they ride a horse at Camarero Racetrack. **Exhibit -6-**.

32. On that Friday, the jockeys in an illegal concerted activity, refused to register for the horses they would ride for the races scheduled on June 30 and July 1, 2016, in effect boycotting the racetrack operations and prompting the racetrack to suspend the racing operations for those two (2) days. The Administration for the Industry and Horseracing Sports, an agency of the Commonwealth of Puerto Rico, issued a certification that evidenced that, for the inscriptions held that day, the inscription tickets were presented without any jockeys. **Exhibit -7-.**

33. Defendants' boycott consists in their concerted refusal to sign the tickets to ride any horse at Camarero Racetrack until an increase in the amount of money they receive for every time they ride a horse is accepted. This is plainly illegal economic extortion.

34. On June 27, 2016, CHPR through its president, Mr. Renato Barrios, sent a letter to Mr. Jorge Toro, Esq., stating that the informal request made by the Asociación de Jinetes for an increase in the amount of the compensation received by the jockeys per race, should be put in writing. Also, in his letter, Mr. Barrios informed Mr. Toro that he was willing to negotiate with the jockeys within a ninety day (90) day period. **Exhibit -8-**.

35. On June 27, 2016, Mr. Jorge Toro sent a letter to Mr. Renato Barrios and Mr. Luis Gervitz, answering Mr. Barrios' letter of the same date. In its letter, Mr. Toro informed Mr. Barrios that the ninety (90) day period was unacceptable for the jockeys. **Exhibit -9-.**

36. On June 27, 2016, the Confederación de Jinetes Puertorriqueños and the Asociación de Jinetes issued a press release. **Exhibit -10-**.

37. As a result of Defendants' boycott activities, on June 30, 2016 no races were held due to the jockey's boycott. The government agency regulating the horseracing activities issued a Certification on that date evidencing the receipt of documents submitted by 37 jockeys indicating they would not prospectively participate in any scheduled races after June 24, 2016. It is important to note that these 37 jockeys are the only active jockeys in Puerto Rico that can mount horses for the races at Camarero. **Exhibit -11-**

38. The cancellation of the races for June 30, 2016 caused Camarero and CHPR substantial losses. Plaintiffs lost the portion of the handle that they would have earned, both at the track and on wagers from intestate simulcast broadcasting. In addition, on the average, Camarero and CHPR lost in income not received from the betting approximately Fifty Six Thousand Dollars ($56,000.00) each, per day the races are cancelled.

39. For tomorrow July 1, 2016 the races have been suspended due to the jockey's boycott, causing plaintiffs additional losses to their operations.

40. Specifically, a race of the Puerto Rico Triple Crown was scheduled to be held tomorrow July 1, 2016, during the "Night at the Races, which was an additional incentive for the public to attend the racetrack and for gamblers to place their bets.

41. Plaintiff Camarero has been attempting for some time, to bring back the horse racing enthusiasm of years ago, because the horse track betting population has decreased. These

attempts include the establishment of new promotional campaigns, one of which schedules a special activity held during the first Friday of every month. This event is called "Night at the Races". This event has already taken place for several months. It has proven to be very successful and of benefit to the racing industry. The money received from the bets during said racing day has increased substantially. Due to the jockey's boycott, cancellations of the races at Camarero have occurred as well as of the cancellation of the event of the "Night at The Races". Enclosed please find the Orders of the Horseracing Administrator ("Administrador Hípico") regarding the cancellation of those two races. See **Exhibit -12-** and **Exhibit -12a-**.

42. These cancellations, and others yet to come, if the injunctive relief requested is not immediately granted, will cause the horse racing fans in Puerto Rico, including those tourists traveling to the island for racetrack betting, to stop attending the racetrack and the betting parlors for an undetermined period of time. As a result, there will be a decline in the amounts received from the bets and the total wagers that is impossible to determine at this time. What can be readily ascertained, is that for each day the racetrack does not operate due to this illegal boycott, Camarero, the Government, the horse owners and all the parties that receive a percentage of the proceeds, will not receive their participation of the proceeds. Off premises betting decreases substantially when the Racetrack does not open, causing additional losses.

43. This interruption of the horse races will cause an irreparable damage to Camarero Racetrack, to the horse owners, as well as to all the members of the horse racing industry, in Puerto Rico and in the United States.

44. The races held at Camarero Racetrack are viewed through simulcast out at the Dominican Republic. Camarero collects a fee from the bets placed from the Dominican

Republic. Every time a race day is cancelled, Plaintiffs suffer the consequences of not receiving its participation of those simulcasts out and such failure affects its goodwill abroad.

45. In addition, Camarero has simulcasts in from races in other racetracks in the United States. These races are included in Camarero's Racing TV programs. Bets can be placed at Camarero for those races held in the United States, from which Plaintiffs earn an economic participation. If a race day is cancelled, Plaintiffs cannot receive from the bets placed in those races his share of the betting proceeds. A boycott of the jockeys to the scheduled races affects betting in Puerto Rico, the United States and the Dominican Republic, affecting interstate and foreign commerce.

46. A boycott of the jockeys to the scheduled races affects the purchase of the products, medicines, food, supplements, professional services, and others used for the maintenance and care of the horses and the racetrack, which are acquired from the United States also affecting interstate commerce.

47. By engaging in the acts and practices discussed above, Defendants have acted in combination and conspiracy with its members to raise, fix or maintain the consideration received by professional jockeys.

## THE INJURY

48. The actions of Defendants have caused Plaintiffs monetary loss and injury from the cancellation of races, lost wagering opportunities, and the disruption of its business.

49. In addition to monetary damages, the actions of the Defendants have caused Plaintiffs irreparable harm, which is less capable of monetary measurement, and will continue to do so in the following manner if not restrained:

a. The loyalty and confidence of patrons is disrupted and adversely affected when they make plans and attend racing at the track, only to find that races have been abruptly cancelled as a result of the jockeys' boycott.

b. Camarero may lose patrons who decrease or stop their trips to the racetrack because they cannot rely on whether racing will, in fact occur.

c. In addition to the loss of good will and income from wagering at the racetrack, the Defendants' actions have caused similar damage to Camarero's goodwill and wagering income among patrons who attend simulcast facilities where Camarero's races are seen throughout the Unites States.

d. In addition, Plaintiffs suffer loss of income from the outside betting agencies that for the most part do not open when a race day is cancelled.

e. Plaintiffs cannot make up for the loss of a race day or a decrease in the number of races in a race card because Commonwealth regulators establish the race days and control the number of such days.

f. Insofar as races are not held, horse owners suffer the consequential losses of not receiving their participation on the bets made, as well as the fact that they need to sustain the expenses, without the receipt of any income to care for their horses, ready to race, but for the boycott of the jockeys.

g. Competition for mounts on horses has been and will continue to be unreasonably restrained due to the boycott.

h. The administration of thoroughbred racing conducted by Camarero has been disrupted, resulting in increased costs.

i. Defendants' actions are causing irreparable harm to Camarero's operation and to

the CHPR and its members, and to their relationship between patrons, owners and trainers.

50. If the relief sought herein is not granted, the unlawful practices of the Defendants will continue toward their goal of unlawfully increasing the consideration received by professional jockeys for the riding of horses in thoroughbred racing at the expense of Camarero and other participants in the thoroughbred racing industry.

### **COUNT ONE-SHERMAN ACT-BOYCOTT**

51. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

52. The Defendants' concerted action in refusing to offer their services as professional jockeys for the upcoming races in Camarero Racetrack constitutes an illegal boycott in violation of the Sherman Antitrust Act. 15 U.S.C. § 1.

53. Section 1 of the Sherman Antitrust Act proscribes that "[e]very contract, combination … or conspiracy, in restraint of trade or commerce…" and penalizes "every person who shall make any contract or engage in any conspiracy…declared to be illegal. 15 U.S.C. § 1.

54. Defendants' have engaged, orchestrated and/or have entered into a conspiracy to refuse to offer their services as professional jockeys for the races being held in Camarero Racetrack in violation of the Sherman Antitrust Act.

55. The Defendants are independent contractors and have no legal right to declare a strike and/or boycott.

56. The foregoing acts of the Defendants have unreasonably restrained trade in the market for professional jockey services and such restraint constitutes a violation of federal law.

57. Plaintiffs have suffered, suffer and are threatened with continuing to suffer, immediate and irreparable injury unless the Court issues the requested preliminary injunctive relief

prohibiting Defendants from continuing to violate the law.  These violations are continuing and will continue in the absence of the relief requested.

58. The injunctive relief requested is fully authorized under the terms and provisions of 15 U.S.C. § 26.

## COUNT TWO- SHERMAN ACT –PRICE FIXING

59. Plaintiffs incorporate by reference the preceding paragraphs.

60. The foregoing acts and practices of the Defendants constitute a contract, combination, or conspiracy to raise, fix or maintain the consideration received by professional jockeys for riding horses in thoroughbred races which is a per se violation of § 1 of the Sherman Act.

61. The foregoing acts of the Defendants have unreasonably restrained trade in the market for professional jockey services and such restraint constitutes a violation of federal law.

62. Plaintiffs have suffered, suffer and are threatened with continuing to suffer, immediate and irreparable injury unless the Court issues the requested preliminary injunctive relief prohibiting Defendants from continuing to violate the law.  These violations are continuing and will continue in the absence of the relief requested.

63. The injunctive relief requested is fully authorized under the terms and provisions of 15 U.S.C. § 26.

## COUNT THREE-DAMAGES UNDER THE CLAYTON ACT

64. Plaintiffs incorporate by reference all preceding paragraphs and further state and pray as follows:

65. Section 4 of the Clayton Act, 15 U.S.C § 15, provides, in part, that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust

laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

66. Plaintiffs have suffered damages in business and property by the conspiracy and concerted actions of the Defendants in refusing to ride thoroughbred horses in the races held at Camarero Racetrack. Accordingly Plaintiffs seek redress of the damages in accordance with the Clayton Act remedies.

67. 5 U.S.C. § 16 of the Act states that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity . . ." 15 U.S.C. § 26. By its express terms, Section 4 contemplates a monetary award to plaintiffs who have already sustained actual damages, while Section 16 permits a plaintiff to obtain an injunction prior to sustaining actual injury by demonstrating that the defendant's anticipated violation of the antitrust laws threatens to cause injury to the plaintiff if consummated.

68. Plaintiffs have already sustained actual damages and request threefold recovery of the same pursuant to the Clayton Act.

V. **CONCLUSION**

For the preceding reasons, the Plaintiffs request that this Court grant a temporary restraining order, preliminary injunction, and permanent injunction enjoining the Defendants from, through their concerted action, refusing to ride thoroughbred horses in the races held at

Camarero Racetrack. Plaintiffs demand to be made whole due to the damages caused by Defendants illegal acts.

A Motion for TRO and/or Preliminary Injunction is contemporaneously being filed on this date.

## VI.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, CHPR and CAMARERO respectfully request that the court:

**A.** Enter a temporary restraining order, preliminary and permanent injunction to prevent future violations of the cited federal laws prohibiting Defendants, its officers, directors, agents, employees, members and all other person acting in concert or participation with them from, directly or indirectly through any device, entering into, continuing, cooperating in, or carrying out any agreement, understanding, plan or common course of action, either explicit or implied to:

(1) Refuse to provide jockey services at thoroughbred races;

(2) Interfere with operations of Camarero in connection with any effort to fix, increase, stabilize, or otherwise affect the level of consideration for jockey services in thoroughbred races, including but not limited to, the payment per mount of jockeys

(3) Coerce any person not to provide or discourage any person from providing jockeys' services in connection with any effort to fix, increase, stabilize or otherwise affect the level of consideration for jockey services in thoroughbred races, including but not limited to, the payment per mount of jockeys;

(4) Encourage, suggest, advice, or induce the Defendants or any other person to engage in any action prohibited by such an injunction.

(5) For an award of reasonable attorney's fees pursuant to the provisions of 15 U.S.C. § 26 and for an award of punitive damages in an amount to be determined at trial; and

(6) For such other relief to which Plaintiffs may appear to be entitled.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 30th day of June, 2016.

S/ **ROBERTO LEFRANC MORALES, ESQ**.
**USDC-PR #210802**
Email: rlm@martilaw.com

S/ **FRANCISCO RAMOS MARTÍNEZ**
**USDC-PR #224711**
Email: fjramos@martilaw.com

MARTINEZ-ALVAREZ, MENENDEZ CORTADA
& LEFRANC ROMERO, PSC
Edif. Centro de Seguros, Ofic. 407
Ave. Ponce de León 701,
San Juan, PR 00907-3248
Tel. (787) 721-1140 x-211
Fax (787) 721-7866
Attorneys for CHPR


**MANUEL PORRO VIZCARRA**
**LAW OFFICES**
382 Escorial Avenue
Urb. Caparra Heights
San Juan, P.R. 00920
Telephone 787-774-8200
Facsimile 787-774-8297

**/S/MANUEL PORRO-VIZCARRA**
USDC # 207006
Email:  mpv@mpvlawpr.com
Attorneys for Camarero

17