# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CONFEDERACIÓN HÍPICA DE PUERTO RICO, et al.,** *Plaintiffs,* v. **CONFEDERACIÓN DE JINETES PUERTORRIQUEÑOS, INC., et al.,** *Defendants.* | **CIVIL NO. 16-2256 (DRD)** |

**OPINION AND ORDER**

Pending before the Court is Plaintiffs, Camarero Racetrack Corp., and Confederación Hípica de Puerto Rico, Inc.'s *Motion for Summary Judgment*. *See* Docket No. 248. Defendants/Counter-Plaintiffs, Confederación de Jinetes Puertorriqueños, Inc. filed its respective opposition thereto. *See* Docket No. 258. Thereupon, a *Reply* and *Surreply* were filed by Plaintiffs and Defendants/Counter-Plaintiffs, respectively. *See* Docket Nos. 259 and 269. Subsequently, Plaintiffs filed a *Supplemental Motion for Summary Judgment* wherein they produced an updated account of the damages subject to a reduction as to three (3) additional days of races that were held to compensate for the races that were cancelled due to the jockeys' strike. *See* Docket No. 272. The Defendants then filed an *Opposition to Camarero and CHPR's Supplemental Motion for Summary Judgment* addressing Plaintiffs' updated amounts and other unrelated matters.[1] *See* Docket No. 277.

---

[1] The only issue that the Court is entertaining in the instant *Opinion and Order* is the damages phase of the Complaint filed by Plaintiffs Confederación Hípica de Puerto Rico and Camarero Racetrack, Corp. as a result of the alleged strike and boycott of horse races that were scheduled for June 30, July 2 and July 2, 2016 and the opposition thereto filed

For the reasons stated herein, the Court **GRANTS** Plaintiffs' *Motion for Summary Judgment* as amended by way of *Supplemental Motion for Summary Judgment. See* Docket Nos. 248 and 272.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The instant case arises of a Complaint filed by Plaintiffs, Confederación Hípica de Puerto Rico, Inc. (hereinafter, "CHPR") and Camarero Racetrack Corp. (hereinafter, "Camarero") against Confederación de Jinetes Puertorriqueños, Inc. and a series of personally named individual jockeys for allegedly boycotting and cancelling horse races that were scheduled for June 30, July 1 and July 2, 2016 in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, the Clayton Act, and other federal statutes, as the jockeys are not employees but independent contractors of CHPR. Accordingly, Plaintiffs requested a temporary restraining order, a Preliminary and Permanent Injunction as well as damages as a result thereof.

As a result of the arguments set forth by Plaintiffs, a temporary restraining order (hereinafter, "TRO") was issued by the Court. The Court found that a TRO was warranted pursuant to the allegations set forth and applicable law. Accordingly, the jockeys and their respective associations were ordered to immediately desist from any boycott against the Plaintiffs. The jockeys were further ordered to continue riding on horse racing days until otherwise ordered by the Court. *See* Docket No. 33 at 11.

Upon conducting several evidentiary hearings and upon a careful evaluation of memorandum of facts and law submitted by the parties, the Court granted Plaintiffs' *Injunction*

---

by Confederación de Jinetes Puertorriqueños, Inc. The Court is divested of jurisdiction as to all other matters, such as, mount fees and/or income of the jockeys. Thus, the Defendants are to set forth their claims before the other proper forums.

request. *See* Docket No. 210. Subsequently, the Court entered an *Amended Opinion and Order* wherein the Preliminary and Permanent Injunction were granted in favor of Plaintiffs. Thereafter, the case moved to the damages stage. *See* Docket No. 214.

The Court, however, conducted several settlement conferences in order to encourage the parties to engage in settlement negotiations that would put an end to the outstanding damages litigation. As the parties failed to reach a settlement agreement, Plaintiffs filed *a Motion for Summary Judgment* that is currently pending before the Court. *See* Docket No. 248. A *Supplemental Motion for Summary Judgment* was subsequently filed by Plaintiffs. *See* Docket No. 272.[2] Proper analysis of the parties' motions requires a careful scrutiny of the underlying legal framework.

## II.     FACTUAL FINDINGS

The following factual findings are taken from the parties' statements of undisputed facts, and supported documentation. Upon careful review of the record, the Court finds the following facts are undisputed:

1. On June 30, July 1 and July 2, 2016 no races were held at the Camarero Racetrack due to the fact that 37 jockeys, members of the Confederación de Jinetes Puertorriqueños, Inc. (hereinafter, "CJP") and Asociación de Jinetes de Puerto Rico, Inc. (hereinafter, "Asociación), informed they would not participate prospectively in any scheduled races after June 24, 2016. (Docket No. 153 at ¶ U and V).

---

[2] Therein, Plaintiffs submitted an updated assessment of damages.

2. Plaintiffs CHPR and Camarero filed suit against CJP and Asociación[3] for the illegal antitrust violation of a concerted refusal to deal by the two defendants associations and the individual jockeys to said entities. (Uncontested).

3. On July 9, 2016, the Court issued a Temporary Restraining Order ("TRO"), based on the fact that jockey defendants have traditionally been considered to be independent contractors, who were engaged in a "concerted refusal to deal" in violation of a Sherman and Clayton Acts. Further, that they were not covered by the "labor dispute exception" as expressed in a similar situation of jockeys versus management of the racetrack and horse owners, *San Juan Racing Association, Inc. v. Asociación de Jinetes de Puerto Rico, Inc., et al.*, 590 F.2d 31, 32 (1st Cir. 1979)(confirming antitrust injunctive relief as to a "concerted refusal to deal" by the jockeys against management of the racetrack). *See* Docket Nos. 23, 33, 37, 41, 46 and 113. (Docket No. 33 at 11).

4. The only defendant active at this stage of the proceedings is CJP, as Asociación entered into a Settlement Agreement with Plaintiffs herein. Hence, Asociación is no longer a party in this case. (*Amended Judgment* dated August 18, 2017, Docket No. 207).[4]

5. After evidentiary hearings held and memorandums by all parties submitted, on November 8, 2017, this Court issued an *Amended Opinion and Order* granting the Preliminary and Permanent Injunction, and the case was moved to the damages stage. (Docket No. 214).

---

[3] The Court notes that in the Complaint, Plaintiffs included individual jockeys and their conjugal partnerships as members of Confederación de Jinetes and Asociación de Jinetes de Puerto Rico. *See* Docket No. 1.
[4] *See supra* note 1.

6. On March 27, 2018, Camarero sent CJP's counsel an updated summary of all damages to be claims in this case, showing total losses of $636,813.00 of which $338,266.00 were caused to Camarero and $298,547.00 to CHPR. (Docket No. 248-4 at 2).

7. During the Status Conference held on March 28, 2018, Plaintiffs informed the Court that they had submitted to CJP an assessment of the damages suffered during the three (3) days of the illegal boycott and Defendant acknowledged having been furnished with the damage report. (Docket No. 222).

8. On June 9, 2018, Camarero sent CJP an Answer to Interrogatory and Production of Documents. (Docket No. 248-2).

9. On May 30, 2018, CHPR also answered an Interrogatory and Production of Documents. (Docket No. 248-3).

10. Camarero expressed in the answers to interrogatory and production of documents that all the evidence regarding the damages suffered was produced on March 27, 2018. (Docket No. 248-2 at ¶ 15; Docket No. 248-4).

11. At the time the *Motion for Summary Judgment* was filed, Camarero and CHPR filed the damages pursuant to the answers of interrogatory and production of documents submitted on March 27, 2018. (Docket No. 248, Exhibits 2, 3 & 4).

12. On August 7, 2019, the Defendants filed an *Opposition to Plaintiffs' Request for Summary Judgment*. (Docket No. 258).

13. The Defendants, in their *Opposition*, adduced for the first time in this litigation past the discovery deadlines, that the computations of the damages claimed by Plaintiffs did not

include the income received during the three (3) days wherein the races were held in substitution of the three (3) cancelled races. *Id.*

14. There are no motions in the Court's docketing system that discuss the matter of the substitution races prior thereto.

15. During the Status Conference held on September 19, 2019, Plaintiffs agreed to voluntarily recompute the losses crediting the Defendants with any recoveries received from those substitute races. (Docket No. 271).

16. The substitute dates for reassignment of races as granted by the Horse Racing Board in Case No. JH-15-47 were July 18, July 27 and August 1, 2016. *Id.* at ¶¶ 5-6.

17. After the recomputation of the losses, taking into consideration the recoveries that Plaintiffs received on account of the three (3) race days that the local Horseracing Board allowed, the losses have been adjusted pursuant to the Court's Order. (Docket Nos. 271; 272).

18. Camarero's loss from direct and continuing wagering was **$49,983.00** and **$146,160.00**, respectively. (Docket No. 272, Exhibit A at ¶¶ 24-28).[5]

19. Camarero's loss for programs sales was **$49.00**. *Id.* at ¶ 36.[6]

20. Camarero's loss for "servicios impresos" revenues was **$443.00**. *Id.* at ¶ 37.[7]

---

[5] Plaintiffs' initially claimed that the loss in commissions from direct and continuing wagering was $144,607.00 and $146,160.00 as to CHPR and Camarero. Upon filing the updated damages figures, the record reflects a deduction of $94,624.00 as to direct and continuing wagering. *See* Docket No. 248-1 at ¶ 11.

[6] The updated figure of Camarero's loss for programs sales reflects a deduction of $1,307.00 in comparison to the initial figure of $1,356.00 *See Id.* at ¶ 12.

[7] The updated figure of Camarero's loss for "servicios impresos" reflects a deduction of $1,601.00 in comparison to the initial figure of $2,044.00 *See Id.* at ¶ 13.

21. Camarero's loss for food commissions was **$7,430.00**. *Id.* at ¶ 54.[8]

22. Camarero did not have a loss of VLT revenues. *Id.* at ¶ 54.[9]

23. CHPR's loss in commissions from direct and continuing wagering was **$49,983.00** and **$146,160.00**, respectively. *Id.* at ¶¶ 24-28.[10]

24. CHPR's loss for "servicios impresos" revenues was **$443.00**. *Id.* at ¶ 37.

25. CHPR did not incur in any loss for VLT revenues. *Id.* at ¶ 56.[11]

26. The total economic damages caused by the jockeys' boycott on June 30, July 1, and July 2, 2016 to Camarero were **$200,822.00**. *Id.* at ¶ 21.[12]

27. The total of economic damages caused by the jockeys' boycott on June 30, July 1 and July 2, 2016 to CHPR were **$196,073.00.** *Id.* at ¶ 56.[13]

### III.    LEGAL STANDARD

*Motion for Summary Judgment Standard (Fed. R. Civ. P. 56)*

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable

---

[8] The updated figure of Camarero's loss for food commission reflects a deduction of $436.00 in comparison to the initial figure of $7,866.00. See *Id.* at ¶ 15.
[9] As opposed to the initial figure of $36,214.00, the updated figure reflects Camarero suffered no losses related to VLT revenues. See *Id.* at ¶ 14.
[10] *See supra* note 5.
[11] As opposed to the initial figure of $5,736.00, the updated figure reflects CHPR suffered no losses related to VLT revenues.
[12] The updated figure of the total of economic damages caused by the jockeys' boycott to Camarero reflects a deduction of $137,404.00 in comparison to the initial figure of $338,266.00. See *Id.* at ¶ 16.
[13] The updated figure of the total of economic damages caused by the jockeys' boycott to CHPR reflects a deduction of $102,474.00 in comparison to the initial figure of $298,547.00. See *Id.* at ¶ 17.

jury could resolve the point in favor of the non-moving party." See Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (citing *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby, Inc.*, 477 U.S. at 255 (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–661 (1st Cir. 2000) (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248; *Prescott*, 538 F.3d at 40 (1st Cir. 2008) (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *Shalala*, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. Id. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and

competent evidence. *Maldonado–Denis v. Castillo Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990); *see also Suarez v. Pueblo Int'l.*, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–248. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." *Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013)). The Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Anderson*, 477 U.S. at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis provided). *See* Fed. R. Civ. P. 56(a).

Hence, in order to prevail, Plaintiffs must demonstrate that, even admitting well-pleaded allegations in light most favorable to Defendants, the applicable law compels a judgment in its favor.

IV. ANALYSIS

The Court has already determined that the jockeys, in effect, incurred in boycotting and cancelling horse races that were scheduled for June 30, July 1 and July 2, 2016 in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, the Clayton Act, and other federal statutes, considering that the jockeys are not employees but independent contractors of CHPR. *See* Docket No. 214. In fact, the instant controversy stems of the decision of 37 jockeys of not participating in three (3) scheduled races after June 24, 2016. *Id.*

Plaintiffs filed a suit against CJP for the illegal antitrust violation of a concerted refusal to deal by the two defendants associations and the individual jockeys to said entities. The Court issued a TRO based on the fact that jockeys have been traditionally considered to be independent contractors, who were engaged in a "concerted refusal to deal" in violation of the Sherman and Clayton Acts. Accordingly, they are not covered by the "labor dispute exception" as expressed in other instances such as the First Circuit decision in *San Juan Racing Association, Inc. v. Asociación de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979). After evidentiary hearings were held and memorandums of law submitted by all parties, the Court ultimately entered a Preliminary and Permanent Injunction against the jockeys and the case was moved to the

damages stage, thereafter. Thus, Camarero and CHPR suffered damages. At issue is determining the extent of the damages suffered by Plaintiffs.

On September 23, 2019, Camarero filed a *Supplemental Motion for Summary Judgment* wherein an updated assessment of damages was produced to the Defendants along with a *Sworn Statement Under Penalty of Perjury* subscribed by Mr. Stanley Pinkerton, Chief Financial Officer of Camarero Racetrack, Corp. *See* Docket No. 272, Exhibit A. Mr. Pinkerton's statement reflects total losses of $396,895.00 of which $200,822.00 were caused to Camarero and $196,073.00 to CHPR. *See Id.*

From the *Sworn Statement Under Penalty of Perjury* included in support of the *Supplemental Motion for Summary Judgment*, arises the fact that the Defendants breached their obligations with Plaintiffs by boycotting and cancelling horse races for the dates of June 30, July 1 and July 2, 2016, causing damages to Plaintiffs that are due and payable. It is undisputed that the amounts due and payable to date are $200,822.00 as to Camarero and $196,073.00 as to CHPR. These amounts of losses include a mitigation of damages, by way of substitution races held on July 18, July 27 and August 1, 2016, that resulted in a deduction as to the earnings received by Plaintiffs in the substitution races. Furthermore, there is no genuine issue of material fact as to the Defendants' liability, as the Court has already granted Permanent Injunction in favor of Plaintiffs. *See* Docket No. 214. There is also no genuine issue of material fact as to Plaintiffs' right to seek judicial redress of payment on the outstanding debt for damages. Accordingly, Plaintiffs are entitled to judgment as a matter of law providing for the compensation for due and payable damages as described above.

On a final note, the Court finds that the Defendants failed to properly oppose to Plaintiffs' *Motion for Summary Judgment* pursuant to the Fed.R.Civ.P. 56 requirements. Particularly, the Defendants resorted in denying Plaintiffs' *Amended Declaration of Uncontested Facts in Support of Summary Judgment* by providing an *Unsworn Declaration Under Penalty of Perjury* of CJP's alleged Accountant-Attorney Olga Benítez in support thereof. *See* Docket No. 277-5. Yet, Ms. Benítez' *Declaration Under Penalty of Perjury* is untimely. At this time, it is unclear whether Ms. Benítez' intervention in the instant case is as a potential witness or expert witness. If she were retained as an expert witness, as implied in her Declaration, the Defendants failed to disclose prior hereto, the fact that she was retained to declare on their behalf if the instant matter proceeds to trial. Said omission is in clear contravention to Fed.R.Civ.P. 26(A).[14]

The Defendants, thus, attempted to cure the deficiencies identified by the Court of their former *Opposition* (Docket No. 258) and *Surreply* (Docket No. 269), by presenting a potential expert witness without disclosing her identity prior thereto. The Court notes that by allowing the Defendants to submit an *Amended Surreply* upon Plaintiffs' filing of the updated damages demand, the Court was only allowing the Defendants an opportunity to properly submit their arguments pursuant to the applicable rules. It was not permission to attempt to reopen the discovery of the instant case which is long gone.

Most crucial and determinative, Defendants failed to comply with Rule 56's requirements when filing a declaration in support to the opposition to motion for summary judgment. Rule 56 clearly provides that, "[a]n affidavit or declaration used to support or oppose a motion must be

---

[14] Rule 26(a)(2)(A) provides in its pertinent part that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705."

<u>made on personal knowledge</u>, set out facts that would be admissible in evidence, and <u>show that the affiant or declarant is competent to testify on the matters stated</u>." Fed.R.Civ.P. 56(c)(4) (Emphasis ours). Defendants failed to establish Ms. Benítez' personal knowledge as to the facts surrounding the instant case, as well as her credentials to do so, but ultimately, the Court finds her observations and conclusions turned out to be baseless, incomprehensible and with no documents in support thereof. As previously discussed, the non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado-Denis*, 23 F.3d at 581. More importantly, Rule 56 of the Federal Rules of Civil Procedure clearly provides that

> "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it."

Fed.R.Civ.P. 56(e). Likewise, the Local Rules provide that when opposing to a statement of material facts, "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule." P.R.D. Local Rule 56(c). For the aforementioned reasons, the Court hereby discards Ms. Olga Benítez' *Declaration Under Penalty of Perjury*.

In the instant case, the statement of Ms. Benítez did not show in a comprehensive manner the mistake in Plaintiffs' damages as a result of the three (3) days in which no races were held. Yet, Plaintiffs provided an update as to the damages figure to deduct the earnings obtained as a result of the substitution races that were held as part of a mitigatory effort to recover the earnings lost in June 30, July 1, and July 2, 2016.

Finally, the Court finds that the major drawback on the Defendants failure to properly answer Plaintiffs' *Amended Declaration of Uncontested Material Facts in Support of Summary Judgment ("SUMF")* (Docket No. 272-1) is that a "statement of material facts . . . shall be deemed admitted," but only "if supported by record citations" as required by Local Rule 56. Not properly answering and/or opposing a summary judgment request under Local Rule 56(c) is "at their own peril." *See* P.R.D. Local Rule 56(c) and (e); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir. 2001). Accordingly, the Court deems the Defendants' failure to properly address the arguments set forth in Plaintiffs' request for summary judgment is fatal to their defense.

### V.  CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Plaintiffs' *Motion for Summary Judgment* (Docket No. 248) as amended by way of *Supplemental Motion for Summary Judgment* (Docket No. 272). Thus, Camarero Racetrack Corp. is entitled to the reimbursement of $200,822.00 in damages, and CHPR is entitled to $196,073.00 in damages as a result of the jockeys' boycott.[15] Judgment pursuant to the instant *Opinion and Order* is to be issued forthwith.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2019.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

---

[15] The Court notes that as there were initially two entities that were named defendants as participants of the jockeys' boycott, those entities may be jointly or severally responsible for the damages stated herein.