IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CONFEDERACIÓN HÍPICA DE PUERTO RICO, et al.,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CONFEDERACIÓN DE JINETES PUERTORRIQUEÑOS, INC., et al.,**<br><br>*Defendants.* | **CIVIL NO. 16-2256 (DRD)** |

**OPINION AND ORDER**

Pending before the Court is Defendants/Counter-Plaintiffs, Confederación de Jinetes Puertorriqueños, Inc. ("CJP") and its members' (collectively, the "Defendants") *Amended Motion to Dismiss for Failure to Join Indispensable Parties and/or Failure to Prosecute; Requesting the Court to Amend and/or to Alter Judgment Under Rule 59(e) of the [Federal] Rules of Civil Procedure*. *See* Docket No. 310. Plaintiffs, Confederación Hípica de Puerto Rico, Inc. and Camarero Racetrack Corp. (hereinafter, "CHPR" and "Camarero" respectively, and collectively, the "Plaintiffs") filed and *Opposition* thereto. *See* Docket No. 315. A *Reply* was subsequently filed by the Defendants. *See* Docket No. 317.

For the reasons stated herein, the Court **DENIES** the Defendants' *Amended Motion to Dismiss for Failure to Join Indispensable Parties and/or Failure to Prosecute; Requesting the Court to Amend and/or to Alter Judgment Under Rule 59(e) of the [Federal] Rules of Civil Procedure*. *See* Docket No. 310.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises out of a *Complaint* filed by Plaintiffs, CHPR and Camarero against Defendants, Asociación de Jinetes de Puerto Rico, Confederación de Jinetes Puertorriqueños, Inc. and a series of personally named individual jockeys for allegedly boycotting and cancelling horse races that were scheduled for June 30, July 1 and July 2, 2016 in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, the Clayton Act, and other federal statutes, as the jockeys are not employees but independent contractors of CHPR. Accordingly, Plaintiffs requested a temporary restraining order, a Preliminary and Permanent Injunction as well as damages as a result thereof.

As a consequence of the arguments set forth by Plaintiffs, a temporary restraining order (hereinafter, "TRO") was issued by the Court. The Court found that a TRO was warranted pursuant to the allegations set forth and applicable law. Accordingly, the jockeys and their respective associations were ordered to immediately desist from any boycott against the Plaintiffs. The jockeys were further ordered to continue riding on horse racing days until otherwise ordered by the Court. *See* Docket No. 33 at 11.

Upon conducting several evidentiary hearings and a careful evaluation of memorandum of facts and law submitted by the parties, the Court granted Plaintiffs' *Injunction* request. *See* Docket No. 210. Subsequently, the Court entered an *Amended Opinion and Order* wherein the Preliminary and Permanent Injunction were granted in favor of Plaintiffs. Thereafter, the case moved to the damages stage. *See* Docket No. 214.

The Court, however, conducted several settlement conferences in order to encourage the parties to engage in settlement negotiations that would put an end to the outstanding damages litigation. While Codefendant, Asociación de Jinetes de Puerto Rico settled all matters with

Camarero and CHPR, Confederación de Jinetes Puertorriqueños and its members refused to settle and compensate for the damages suffered by Plaintiffs as a result of the illegal strike. *See* Docket Nos. 155 and 204, respectively. Accordingly, Plaintiffs filed *a Motion for Summary Judgment* that was ultimately granted by the Court. *See* Docket Nos. 248 and 279. The Summary Judgment was amended by way of *Plaintiffs' Supplemental Motion for Summary Judgment. See* Docket No. 272. An *Amended Judgment* of dismissal was accordingly entered on December 4, 2019. *See* Docket No. 306.

Pending before the Court is the Defendants' *Amended Motion to Dismiss for Failure to Join Indispensable Parties and/or Failure to Prosecute; Requesting the Court to Amend and/or Alter Judgment Under Rule 59(e) of Civil Procedure. See* Docket No. 310. The Defendants are essentially seeking a dismissal of the instant action as they allege that summons for CJP members and their individual wives were not executed. But, more importantly, "[t]he individual wives and/or the different individual CJP members' conjugal partnerships, and all other CJP individual and conjugal partnerships members not named in the complaint are indispensable parties in the case, whose outcome affects them directly and complete relief cannot be accorded among those already parties with their absence because they have a financial interest that will be adversely affected relating to the judgment issued by the Court in this action, and, in that person's absence, the court cannot accord complete relief." *Id.* at 5. Additionally, the Defendants request clarification as to the responsibility of Codefendant, Asociación de Jinetes de Puerto Rico, Inc., and its individual members who were also found to be responsible for the damages awarded to Plaintiffs but entered a *Joint Stipulation Agreement* with CHPR but not with Camarero. *Id.* at 9.

Whereas CHPR and Camarero opposed to the Defendant's request for dismissal essentially arguing that "based upon the pleadings, the individual wives as well as their conjugal partnerships were, in fact, represented in this case by the attorneys who signed the pleadings on behalf of all 'Defendants' not just CJP." Docket No. 315 at 2. Moreover, Plaintiffs argue that including a counterclaim for damages in business, economic harm and deprivation of income and wages results in obtaining personal jurisdiction as to all defendants through voluntary appearance particularly since compensation for wages belongs to the conjugal partnerships pursuant to Puerto Rico law. *See* P.R. Laws Ann. Tit. 31, § 3641. Finally, Plaintiffs argue that "Defendants have not presented evidence to this Court that identifies which Plaintiffs are married, and of those that are married, which ones have a conjugal partnership." *Id.* at 6.

As several arguments were raised by the Defendants, the Court will discuss them *ad seriatim*.

## II.   LEGAL ANALYSIS

### A.   *Motion to Amend and/or Alter Judgment under Fed. R. Civ. P. 59(e)*

It is well recognized that "[a] motion for reconsideration . . . certainly does not allow a party to introduce new evidence or advance new arguments that could or should have been presented to the district court prior to judgment." *Marks 3-Zet-Ernst Marks GMBH & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15-16 (1st Cir. 2006).  Thus, a motion for reconsideration cannot be used as a vehicle to re-litigate matters previously adjudicated. *See Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, n. 4 (D.P.R. 1999).

Motions for reconsideration are entertained by courts if they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law.

4

*See Prescott v. Higgins*, 538 F.3d 32, 45 (1st Cir. 2008); *see also Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir. 1994)(citing *F.D.I.C. Ins. Co. v. World University, Inc.*, 978 F.3d 10, 16 (1st Cir. 1992)). A motion for reconsideration is unavailable if said request simply brings forth a point of disagreement between the court and the litigant, or rehashes matters already properly disposed of by the Court. *See e.g., Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310 (M.D. Pa. 1994).

Whereas, Rule 60 of the Federal Rules of Civil Procedure provides in its pertinent part that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceedings for the following reason[]: (1) mistake, inadvertence, surprise, or excusable neglect. . ." Fed. R. Civ. P. 60(b)(1). However, the First Circuit has consistently held that "[a] motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, ..., nor is it a mechanism to regurgitate old arguments previously considered and rejected...."*Fontanillas-Lopez v. Morel Bauza Cartagena & Dapena LLC*, 136 F. Supp. 3d 152, 159 (D.P.R. 2015), *aff'd sub nom. Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC*, 832 F.3d 50 (1st Cir. 2016) (quoting *Biltcliffe v. CitiMortgage, Inc.,* 772 F.3d 925, 930 (1st Cir. 2014).

The Defendants' motion does not present newly discovered evidence nor argues that there has been an intervening change in the law. *See Prescott*, 537 F.3d at 45. The Defendants' motion can only be entertained by the Court should the mover seek to correct a manifest error of law. *See Id.* However, "[Rule 59(e)] does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the

5

judgment." *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) To that effect, the First Circuit has held that, "[t]he presentation of a previously unpled and undeveloped argument in a motion for reconsideration neither cures the original omission nor preserves the argument as a matter of right for appellate review." *Iverson v. City Of Bos.*, 452 F.3d 94, 104 (1st Cir. 2006).

The problematic with the Defendants' contention is that all arguments raised in their motion "could and should have been presented to the district court prior to judgment." *Aybar*, 118 F.3d at 16. The Court finds that the Defendants are only attempting to re-litigate issues properly disposed of by the Court and voicing their disagreement with the Court's prior ruling, while attempting to raise, for the first time, arguments that could have been raised during the three (3) years that the case at bar was pending before the Court. Therefore, the Court finds that a motion to alter or amend judgment is not the proper mechanism to address this issue.

**B.** ***Motion to Dismiss for Failure to Join Indispensable Parties & Conjugal Partnerships in Puerto Rico***

On a separate note, Defendants are requesting a dismissal under Fed. R. Civ. P. 12(b)(7) as they allege that Plaintiffs failed to join indispensable parties to the case at bar, to wit, wives and conjugal partnerships of CJP members. Rule 12 of Civil Procedure provides in its pertinent part that "[e]very defense for a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (7) failure to join a party under Rule 19 [of Civil Procedure]." Fed. R. Civ. P. 12(b)(7).  When considering a motion to dismiss for failure to join indispensable parties, District Courts employ a two-step approach, to wit, the court analyses whether the person fits the definition of those who should be joined if feasible, and if the person is required, then the court ascertains whether the joinder

is feasible. *Puerto Rico Medical Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 257 F.Supp. 3d 225 (D.P.R. 2017). Particularly, Federal Rule of Civil Procedure 19 provides that,

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, <u>the court cannot accord complete relief among existing parties</u>; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(Emphasis ours). Likewise, the First Circuit has explained that,

> [r]ule 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit. [citation omitted]. The Rule provides for joinder of required parties when feasible, Fed.R.Civ.P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed.R.Civ.P. 19(b). The Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case. *See Picciotto v. Cont'l Cas. Co.,* 512 F.3d 9, 14–15 (1st Cir. 2008); *Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 635 (1st Cir.1989); *see also* 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1604 ("By its very nature Rule 19(a) calls for determinations that are heavily influenced by the facts and circumstances of individual cases....").

*Bacardi Int'l Ltd. v. V. Suarez & Co.,* 719 F.3d 1, 9 (1st Cir. 2013). The Court must then determine "whether the absent person's interest in the litigation is sufficient to satisfy one or more of the tests set out in Rule 19(a)(1)." 7 Fed. Prac. & Proc. Civ. § 1604 (3d ed.). However, [t]he Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case. *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013). Therefore, "[b]y its very nature Rule 19(a) calls for determinations that are heavily influenced by the facts and circumstances of individual cases. 7 Wright & Miller, *Federal Practice and Procedure*, § 1604 (3d ed.)

Likewise, Rule 19(b) of Civil Procedure provides the elements to be considered in order for the Court to determine when joinder is not feasible, to wit,

> [i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). However, "[t]he rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result." *Bourdieu v. Pac. W. Oil Co.*, 299 U.S. 65, 70, 57 S. Ct. 51, 53, 81 L. Ed. 42 (1936). "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." 7 Fed. Prac. & Proc. Civ. § 1609 (3d ed.). More importantly, "[i]t is well settled law that the party moving for dismissal for failure to join an indispensable party must show the need to join the absent party. *W. Auto Supply Co. v. Noblex Advert., Inc.*, 173 F.R.D. 338, 340 (D.P.R. 1997); *see McCann v. Ruiz*, 788 F.Supp. 109, 121 (D.P.R.1992).

Finally, the Federal Rules of Civil Procedure provide that motions for "failure . . . to join a person required by Rule 19(b), . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). However, "Rule

8

21 of the Fed.R.Civ.P. allows the joinder of any party at any stage of the action, even after trial or on appeal, and or such terms that are just. Yet, it should be noted that "[j]oinder is a matter left to the sound discretion of the Court. *Hershey Foods Corp. v. Padilla*, 168 F.R.D. 7, 10 (D.P.R. 1996); *see Paredes Figueroa v. International Air Services of Puerto Rico, Inc.*, 662 F.Supp. 1202, 1204 (D.P.R. 1987); 7 Wright & Miller, *Federal Practice and Procedure*, 1986, § 1688.

Puerto Rico law governs conjugal partnerships. In essence, Article 1393 of the Puerto Rico Civil Code provides that "[t]he conjugal partnership shall always begin on the same day that the marriage is celebrated." P.R. Laws Ann. Tit. 31, § 3622. Among the property belonging to the conjugal partnership are "[property] acquired by the industry, salaries, or work of the spouses or of either of them" and "[t]he fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." P.R. Laws Ann. Tit. 31, § 3641. "Thus, claims for damages such as loss of income, which substitute salary derived from work, belong to the conjugal partnership." *Fraguada Rodriguez v. Plaza Las Americas*, 349 F. Supp. 2d 229, 232 (D.P.R. 2004).

Likewise, "[t]he conjugal partnership has a peculiar legal personality. It is regarded as a separate and distinct entity from the partners who constitute it and has a capacity to sue and be sued, but it cannot represent itself." *Cosme v. 419 Ponce De Leon, Inc.*, 1996 WL 406835, at *2 (D.P.R. May 24, 1996). It is important to note that there is a difference when a conjugal partnership is appearing as a plaintiff than when it appears as a defendant. To wit,

> ". . . significant differences still prevail when the partnership is using the sword as a plaintiff *vis a vis* when using the shield as a defendant. Some cases require the inclusion of both spouses and the conjugal partnership as parties in an action. Some, do not. When the conjugal partnership is a party defendant it 'faces a potential raid of the community property should a judgment be executed against it'. *Mercado–Vega v. Martínez,* 666, F.Supp. 3, 4–5. That is, the patrimony of the

partnership might be detrimentally affected by a judgment and since the interests of each spouse may be incompatible with those of the other spouse, each must be afforded the opportunity to defend them individually. Thus, important concerns of notice and due process require that both spouses and the conjugal partnership be included as indispensable parties and each spouse be served with separate summons."

*Cosme, Id.* at *3; *see* J. Puig Brutau, *Fundamentos de Derecho Civil,* Bosch, Barcelona, 2nd ed., 1985, T. IV, p. 148. However, it is well settled that "[u]nder Article 1301 of the Civil Code any award belonging to the partnership or whatever joint benefits are gained through the suit, will automatically become community property regardless of whether the conjugal partnership and both spouses were *vel non* named parties to the action." *Id.* The Puerto Rico Civil Code further provides that "either of the spouses may legally represent the conjugal community. Any unilateral administration act of one of the spouses shall bind the community property and shall be presumed valid to all legal effects." P.R. Laws Ann. Tit. 31, § 286.

The Court begins by noting that the instant case was under its consideration for more than three (3) years, that is, from June 30, 2016 until September 30, 2019, yet, the Defendants never raised an argument related to a lack of personal jurisdiction of the Court as to the wives and/or conjugal partnerships of any of the Defendants during the pendency of the proceedings. Most critical, the Defendants have failed to identify which members of the CJP, wives and/or conjugal partnerships were allegedly not properly summoned. However, as the Defendants have now raised this issue for the first time, the Court deems necessary to discuss it at length for the readers' benefit.

As previously mentioned, the genesis of the instant case is a *Complaint* filed by Plaintiffs, CHPR and Camarero against Asociación de Jinetes Puertorriqueños, CJP and a series of personally named individual jockeys for allegedly boycotting and cancelling horse races that were scheduled

for June 30, July 1 and July 2, 2016 in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, the Clayton Act, and other federal statutes, as the jockeys are not employees but independent contractors of CHPR. Injunctive relief was afforded to Plaintiffs, Asociación de Jinetes Puertorriqueños settled with Plaintiffs, and eventually a Summary Judgment was entered against the Defendants as to the damages suffered by Plaintiffs as a result of the illegal strike.

On August 19, 2016, the Defendants filed their responsive pleading by way of *Answer to Complaint and Counter Claim* wherein by filing the *Counterclaim* on behalf of the Defendants they voluntarily and irrevocably submitted the Confederation, its members and its wives and/or conjugal partnerships to the Court's jurisdiction as follows:

> "Comes now <u>Defendants</u> and Counter-Plaintiffs Confederación de Jinetes Puertorriqueños, Inc. (CJP) and its members, represented by its President Axel A. Vizcarra Pellot, Esq., who respectfully answer[s] to[sic.] the complaint filed against the organization as follows"

Docket No. 82 at 11 (Emphasis added). Among the allegations set forth in the *Counterclaim*, the Defendants claimed economic harm, damages in business, deprivation of income and wages, all of which belong to the conjugal partnerships of the members of the CJP and whom were duly represented by Mr. Axel Vizcarra-Pellot throughout the instant proceedings. As previously mentioned, to the conjugal partnership belong property "obtained by the industry, salaries, or work of the spouses or of either of them." P.R. Laws Ann. Tit. 31 § 3641. By the Defendants answering the complaint and suing Plaintiffs by *Counterclaim* for damages that are property of the conjugal partnership, they were legally representing the conjugal community. *See* P.R. Laws Ann. Tit. 31, § 286.

Furthermore, it is hornbook law that "[t]he jurisdiction of the district court over parties is acquired only by a service of process, <u>or their voluntary appearance</u>." *Herndon v. Ridgway*, 58

11

U.S. 424, 425, 15 L. Ed. 100 (1854). "Once a party has waived its defense of lack of personal jurisdiction, the court may not, *sua sponte*, raise the issue in its ruling on a motion to dismiss. This is so because, since personal jurisdiction may be acquired through voluntary appearance and the filing of responsive pleadings without objection, the court has no independent reason to visit the issue." *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 41 (1st Cir. 2001)(Internal citations omitted).

Not only did the Defendants appear by way of answer to complaint, they also appeared by way of a counterclaim for damages and deprivation of income and wages, among others, that properly belong to a conjugal partnership. Upon the Defendants' appearance in their defense by way of answering the complaint and filing a counterclaim, the Court is forced to conclude that jurisdiction was acquired as to all Defendants upon the Defendants' voluntary appearance, regardless of the fact that several Codefendants may have not been served process, thus, a dismissal for failure to join indispensable parties is unmerited. The Court will not entertain the Defendants' arguments as to lack of prosecution as it deems that all Defendants were either properly served process or voluntarily appeared before the Court by applicable responsive pleading.

Even if the Court were to assume for the sake of the argument that members of the CJP, their wives and conjugal partnerships were not properly served process, the Defendants would not prevail in its contention. The Court briefly explains. "Unlike subject-matter jurisdiction, which is a statutory and constitutional restriction on the power of the court, see U.S. Const. art. III, § 1, personal jurisdiction arises from the Due Process Clause and protects an individual liberty interest. The ability to waive this right thus reflects the principle that 'the individual can subject

12

himself to powers from which he may otherwise be protected.'" *Uffner*, 244 F.3d at 41 n. 1(quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 n. 10, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982))(internal citations omitted).  Accordingly, ". . . since personal jurisdiction may be acquired through voluntary appearance and the filing of responsive pleadings without objection, the court has no independent reason to revisit the issue." *Id.* at 41.

When appearing before the Court by answering the complaint and filing a counterclaim for damages and loss of income and wages, the Defendants failed to raise the alleged lack of personal jurisdiction as to several members, their wives and conjugal partnerships. By doing so, they voluntarily submitted to the Court's jurisdiction when appearing on behalf of the Defendants as a whole, and such argument is deemed waived. Finally, as previously stated, the Federal Rules of Civil Procedure provide that motions for "failure . . . to join a person required by Rule 19(b), . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Raising the issue for the first time after judgment seems unjust, untimely and highly prejudicial to Plaintiffs. Significantly, the Defendants refused to settle this case, against the Court's advice, and instead dragged the controversies for three (3) years until the Court ultimately ruled upon the dispositive motions.[1]

Thus, as a "[j]oinder is a matter left to the sound discretion of the Court. *Hershey Foods Corp. v. Padilla*, 168 F.R.D. 7, 10 (D.P.R. 1996); *see Paredes Figueroa v. International Air Services of Puerto Rico, Inc.*, 662 F.Supp. 1202, 1204 (D.P.R. 1987); 7 Wright & Miller, *Federal Practice and*

---

[1] The Court notes that several settlement conferences were held in attempt to settle the instant case. Particularly, on September 19, 2019, a Status Conference was held, wherein "Camarero provided the Court the settlement offer that [was] currently on the table. The Court consider[ed] the figure to be reasonable and encouraged the Defendants [CJP] to forward it to the jockeys as a 'good settlement.'" *See* Docket No. 271. However, CJP rejected the settlement demands proposed by Plaintiffs, although very reasonable in the Court's opinion. *See also* Minutes of Proceedings, Docket Nos. 254, 260 and 265.

*Procedure*, 1986, § 1688, when considering the totality of the circumstances, the Court deems that all Defendants appeared voluntarily before the Court by way of answer to the complaint and counterclaim and were properly represented by counsel throughout the proceedings. The Court finds that the Defendants are only attempting to raise arguments that should have been raised way before Judgment.

C.  *Confederación de Jinetes Puertorriqueños, Inc. and Asociación de Jinetes de Puerto Rico, Inc. as joint tortfeasors*

On a final note, the Defendants request clarification as to the responsibility of Asociación de Jinetes de Puerto Rico, Inc. and its individual members as they were also held liable for the damages suffered by Plaintiffs but entered into a *Joint Settlement Stipulation and Consent O*rder with Camarero (Docket No. 155), and into a *Joint Stipulation Agreement* with CHPR (Docket No. 204). "It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208, 114 S. Ct. 1461, 1465, 128 L. Ed. 2d 148 (1994).

Therefore, as Camarero and CHPR settled all claims against Codefendant, Asociación de Jinetes de Puerto Rico, Inc., dismissing without prejudice all claims for damages, and upon the fact that Asociación de Jinetes de Puerto Rico, Inc. was found liable for the damages suffered by Plaintiffs, the Defendants are entitled to a credit for that settlement of a percent of the *Amended Judgment* entered on December 4, 2019. *See* Docket No. 306.

D. *Confederación de Jinetes Puertorriqueños, Inc.'s Motion to Clarify the Record, In Compliance With Order*

Considering the fact that Defendants CJP and Asociación de Jinetes de Puerto Rico, Inc. were brought to the instant civil suit as joint tortfeasors, the amount of damages could depend on the number of defendant jockeys that were members of each of the defendant institutions. Accordingly, on September 4, 2020 the Court entered the following Order requesting further detail from the parties, to wit,

> ORDER. It is hornbook law that "[it] is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." McDermott, Inc. v. AmClyde, 511 U.S. 202, 208 (1994). Therefore, as Camarero and Confederación Hípica de Puerto Rico, Inc. settled all claims against Codefendant, Asociación de Jinetes de Puerto Rico, Inc., dismissing without prejudice all claims for damages, and upon the fact that Asociación de Jinetes de Puerto Rico, Inc. was also found liable for the damages suffered by Plaintiffs, the nonsettling Defendants are entitled to a credit for that settlement. As the amount of credit may depend on the number of the defendant jockeys that are members of each of the institutions and participated in the illegal strike that took place on June 30 and July 1 and 2, 2016, the parties are hereby ordered to advise the Court the defendant jockeys that are members of Asociación de Jinetes de Puerto Rico and those that are members of Confederación de Jinetes Puertorriqueños, Inc. **Motion in compliance with the instant Order is due by 9/14/2020.** Signed by Judge Daniel R. Dominguez on 9/4/2020.

Docket No. 322. As a result thereof, Plaintiffs filed an *Informative Motion and In Compliance with Order* (Docket No. 323) wherein they provided a list of the defendant jockeys that were members of each of the jockey's associations at the time the illegal boycott occurred. *See Id.*

In turn, CJP filed a *Motion to Clarify the Record, In Compliance with Order. See* Docket No. 327. Surprisingly, not only does the motion fail to comply with the Court's Order but CJP goes as far as trying to raise another reconsideration argument, this time, the legitimacy or lack thereof of a registration and existence of Asociación de Jinetes de Puerto Rico, Inc. in the Puerto Rico Department of State, and the legitimacy of said association's settlement with Plaintiffs. *See*

15

Docket No. 327 at 5. CJP takes the opportunity to "inform the Court that it has recently founded, and is the legal owner of the Asociación de Jinetes de Puerto Rico, Inc. []. As such, any and all stipulation, agreement and/or document filed in this case by Mr. Alberto Ojeda and/or anyone acting on behalf of Asociación de Jinetes de Puerto Rico, Inc., is hereby declared to be null **ab initio**." *Id.* at 6.

The documents that were precisely produced by CJP prove otherwise. A careful review of the Exhibits produced by CJP forces the Court to conclude that Asociación de Jinetes de Puerto Rico, Inc. was registered and active on the dates in which the illegal strike took place, to wit, June 30, July 1 and 2, 2016. *See* Docket No. 327, Exhibit 2. More importantly, Mr. Alberto Ojeda, Resident Agent and President of the association at the time the events that are subject to the instant civil suit took place, declared under oath that,

> BY MR. VIZCARRA:
> Q. Okay. Mr. Ojeda, what is the correct name of the Asociación de Jinetes?
> A. Asociación de Jinetes de Puerto Rico, Inc.
> THE COURT: And the name then was what?
> THE WITNESS: Asociación de Jinetes de Puerto Rico, Inc.
> THE COURT: Okay. It's still the same association.
> THE WITNESS: It's the only association we have.
> THE COURT: All right. Okay. Thank you.

*Transcript of Proceedings: Preliminary Injunction Hearing July 20, 2016*, Docket No. 145 at 71-72. Thus, Mr. Ojeda clarified that the association was properly registered and active at the time the events occurred. More importantly, considering the documents produced by CJP, two (2) associations with similar names were registered and active during the illegal strike, to wit, Asociación de Jinetes, Inc. and Asociación Independiente de Jinetes de Puerto Rico, Inc. *See* Docket No. 327, Exhibits 1 and 2, respectively. The fact that a new association has been

16

incorporated under the name of Asociación de Jinetes de Puerto Rico, Inc. as recently as May 2020, and that counsel is the legal owner of said corporation, in no way invalidates a properly negotiated agreement between the President of the association at that given time and Plaintiffs. The Court finds that CJP is trying to mislead the Court as to the legitimacy of two agreements that was submitted and authorized by the Court back in 2017.

The Court once again orders CJP to provide the Court the number of jockeys that were members of each of the defendant organizations, enabling the Court to properly distribute the amount in damages as to Asociación de Jinetes de Puerto Rico, Inc. and CJP as they are joint tortfeasors and there was a settlement as to Asociación de Jinetes de Puerto Rico, Inc.. **Failure to strictly comply with the Court's instructions will result in determining the amount of damages solely based on the information provided by Plaintiffs.**

### III.     CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** the Defendants' *Amended Motion to Dismiss for Failure to Join Indispensable Parties and/or Failure to Prosecute; Requesting the Court to Amend and/or to Alter Judgment Under Rule 59(e) of the [Federal] [] Rules of Civil Procedure. See* Docket No. 310. CJP is to comply with the instant Order by October 19, 2020.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge